IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRANELL STEWART and<br>LISA JONES,<br><br>             *Plaintiffs,*<br><br>  v.<br><br>OFFICER ALEXANDER WALDROUP;<br>OFFICER RYAN DEVOUTON;<br>OFFICER KEVIN DEVINE;<br>OFFICER SHANE MONNIG;<br>OFFICER CLIFF HOUSE; and<br>CITY OF MARYLAND HEIGHTS,<br><br>             *Defendants.* | Case No.  4:21-cv-1282<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. On October 26, 2016, while driving home with his infant son, Tranell Stewart was pulled over by an officer of the Maryland Heights Police Department ("MHPD"). When he questioned the reason for his detention, Mr. Stewart was assaulted in front of the mother of his children, Lisa Jones. MHPD officers then searched the couple's home in violation of the Constitution. After unlawfully searching the home without Ms. Jones's consent, MHPD officers demanded that Ms. Jones sign a form stating that she consented to the search. When she initially refused, MHPD officers threatened to arrest her and put her children in protective services.

2. The actions of the officers of the MHPD are the type regularly inflicted against poor people and people of color, both within Maryland Heights and across the St. Louis region.

3. Mr. Stewart and Ms. Jones bring this civil action seeking money damages against Officers Alexander Waldroup, David Devouton, Cliff House, Kevin Devine, Shane Monnig, and the City of Maryland Heights.

**PARTIES**

4. At the time of the incident, Mr. Stewart and Ms. Jones were citizens of the United States and residents of the City of Maryland Heights, State of Missouri. Mr. Stewart currently lives in St. Louis County, Missouri, and Ms. Jones currently lives in Maricopa County, Arizona.

5. At all times referred to herein, Defendants Waldroup, Devouton, House, Devine, and Monnig, (collectively, "Defendant Officers") were commissioned police officers of the City of Maryland Heights within the State of Missouri. They are sued in their individual capacities.

6. Defendant City of Maryland Heights, Missouri ("Defendant City") is a city in the State of Missouri duly incorporated and organized under the laws of the State of Missouri.

7. At all times relevant herein, Defendant Officers acted under color of the laws, statutes, ordinances, and regulations of Maryland Heights and the State of Missouri.

8. At all times relevant herein, except as explicitly stated, Defendants acted under the management, regulations, policies, customs, practices, and usages of Maryland Heights pursuant to their authority as law enforcement officers and public officials of Maryland Heights.

**JURISDICTION AND VENUE**

9. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants are located, and all of the incidents giving rise to this suit occurred, in this judicial district.

10. Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS

### *Seizure By Excessive Force*

11. Mr. Stewart is a 38-year-old African-American resident of St. Louis County, Missouri.

12. On October 26, 2016, Mr. Stewart pulled into the parking lot of his apartment complex in Maryland Heights, in St. Louis County, with his infant son in the back seat.

13. Defendant Devouton, driving an MHPD vehicle, pulled up behind Mr. Stewart's car, turned his emergency lights on, and blocked Mr. Stewart's vehicle into its parking spot. Mr. Stewart had committed no crime. When Mr. Devouton approached his vehicle, Mr. Stewart opened his car door wide because his window was broken and did not roll down.

14. Defendant Devouton blocked Mr. Stewart in his car by standing in front of the door. Defendant Devouton told Mr. Stewart that he had failed to signal, although Mr. Stewart had correctly signaled each of his turns.

15. When Mr. Stewart said that he had not failed to signal, Defendant Devouton responded by stating, "Well I say you did."

16. At this point, Mr. Stewart believed that Defendant Devouton was trying to intimidate him. Additionally, his son in the back seat began to stir and make noises of discomfort.

17. Concerned about his son and the intimidation from Defendant Devouton, Mr. Stewart sought to call Ms. Jones to notify her about the situation. When she did not pick up, Mr. Stewart called a neighbor to witness his interaction with Defendant Devouton.

18. Defendant Devouton demanded that Mr. Stewart hang up his phone. Mr. Stewart asked Defendant Devouton if he was under arrest. Defendant Devouton then paused and did not

respond. At no point during this conversation did Defendant Devouton state Mr. Stewart was under arrest or that he was not allowed to exit his vehicle.

19. With his child stirring in the back seat, Mr. Stewart attempted to get out of his car to get to his son. Defendant Devouton forcefully shoved Mr. Stewart against the car. Attempting to protect himself, Mr. Stewart deflected Defendant Devouton's arms off of his body. At no point did Mr. Stewart initiate any physical contact with Defendant Devouton.

20. Defendant Devouton then immediately escalated the situation, grabbing Mr. Stewart's hair in an attempt to bring him to the ground. As he did this, Defendant Devouton taunted, "You're going to die today."

21. Mr. Stewart attempted to move toward the back of his car where there was greater visibility for others to witness his assault. Mr. Stewart also screamed aloud in order to get the attention of bystanders. With his hands, Devouton was pulling hard on Mr. Stewart's hair.

22. Defendant Alexander Waldroup arrived on the scene soon after Defendant Devouton's assault of Mr. Stewart began. Defendant Waldroup punched Mr. Stewart on the right side of his face. After Waldroup punched Mr. Stewart, Mr. Stewart fell to the ground with Waldroup.

23. Both officers pinned Mr. Stewart to the ground using their entire bodies while yelling, "Stop resisting." Mr. Stewart was not resisting, and at no point did he disobey any orders given by the officers. Both Devouton and Waldroup punched Mr. Stewart repeatedly in the head and body. Mr. Stewart did not hit the officers back, but only tried to dodge the blows.

24. During his assault, the officers put Mr. Stewart's arms behind his back, and he was unable to protect himself as they continued to hit him.

25. As he was assaulted by the two officers, Mr. Stewart yelled for them to stop.

26. The officers handcuffed Mr. Stewart, but Waldroup continued the assault. After Mr. Stewart was handcuffed, Defendant Waldroup stood up, stomped on Mr. Stewart's head multiple times, and finally, kicked him directly in the eye.

27. A photograph of Mr. Stewart after the incident shows the extent of his assault.



28. Ms. Jones, the mother of Mr. Stewart's children and his girlfriend, and a neighbor arrived at the parking lot during the assault. Ms. Jones yelled at the officers, "Why are you stomping him?" The neighbor stated that Mr. Stewart hadn't done anything wrong and yet the officers were stomping on him.

*<u>Unlawful Search</u>*

29. With Mr. Stewart beaten, in handcuffs and on the pavement, Ms. Jones approached Mr. Stewart's car to get her infant son out of the back seat. Defendant House stopped her, pointed his gun at her, and told her to back up. Ms. Jones complied and waited for an officer to bring her child to her.

30. As Mr. Stewart was in the ambulance, several recently-arrived MHPD officers rushed into Mr. Stewart's and Ms. Jones' building.

31. Ms. Jones returned to her apartment building, where she saw several officers waiting for her outside of her apartment unit.

32. As Ms. Jones walked toward her apartment unit, Defendant House charged past her down the hall. Defendant House asked Ms. Jones if both Mr. Stewart and she resided in the apartment, which she confirmed.

33. Without asking for or receiving consent, Defendant House entered the apartment with Defendant Monnig and began looking through each room. When Ms. Jones began asking the officers to explain what was happening, Defendant House told Ms. Jones to "shut the hell up" and stop asking questions, threatening to arrest her for a traffic warrant from the City of Florissant if she didn't allow them to continue illegally searching the home. Defendants House and Monnig then left.

34. Defendants Monnig, House, Waldroup, Devouton, and Devine soon returned and demanded to know if Ms. Jones had a gun. She responded that she did have a gun, which she legally owned.

35. Ms. Jones told Defendant House where the gun was located and had the officer follow her to retrieve the gun in her underwear drawer. Defendant House confiscated the gun, and the officers again left.

36. Defendant House then returned, with Defendants Monnig, Waldroup, and Devine, and asked Ms. Jones if she would consent to a full search of her home. Ms. Jones refused to provide consent, because she did not want the police searching her home.

37. Ms. Jones read the form, which stated she agreed she was "not forced to sign." Upon seeing that, Ms. Jones said that she would not sign. Defendant House told her that if she did not sign the form, he would arrest her and her children would be sent to protective custody. Upon the threat of arrest and losing her children, Ms. Jones signed the form.

38. After obtaining this coerced consent, Officers House, Monnig, Devine, and Waldroup proceeded to search all throughout Ms. Jones and Mr. Stewart's home. Ms. Jones did not willingly consent to this search.

39. Defendant House left with the other officers. He returned ten minutes later with Officer Devine, claiming that he needed an additional consent form signed. Ms. Jones signed this form as well, again out of fear of arrest.

40. The next morning, after Mr. Stewart was released from the Maryland Heights jail, he went to Mercy Hospital to seek medical treatment for his injuries.

41. There, a physician examined Mr. Stewart and determined that Mr. Stewart had suffered significant injuries including a fractured nasal process.

42. For over a week, Mr. Stewart was unable to see out of one eye due to his injuries. Mr. Stewart suffered constant physical pain while recovering from the attack.

43. In addition to the physical pain Mr. Stewart endured, he also suffered from the psychological effects and severe trauma of being violently attacked and fearing for his life and well-being. These psychological effects continue to this day.

## CAUSES OF ACTION

### COUNT I
### Unlawful Seizure of Mr. Stewart
### By Defendant Devouton
### COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant Devouton in Count I, Mr. Stewart states as follows:

44. Mr. Stewart incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

45. In pulling behind Mr. Stewart's parking space with his emergency lights on, Defendant Devouton seized Mr. Stewart.

46. Defendant Devouton lacked probable cause or reasonable suspicion necessary to seize Mr. Stewart.

47. This constituted an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

48. If Mr. Stewart prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Mr. Stewart prays for judgment against Defendant Devouton, for compensatory damages in a fair and reasonable amount, and for punitive damages, plus costs of this action, reasonable attorneys' fees, and for such other and further relief as this honorable Court deems fair and appropriate under the circumstances.

## COUNT II
### Excessive Force Against Mr. Stewart
### By Defendants Waldroup and Devouton
### COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant Waldroup and Defendant Devouton in Count II, Mr. Stewart states as follows:

49. Mr. Stewart incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

50. Defendants Waldroup and Devouton used excessive force against Mr. Stewart.

51. Defendants Waldroup and Devouton, acting individually and in concert, hit, struck, beat, stomped on, kicked, and otherwise brutalized Mr. Stewart as described above, and thereby used excessive force against Mr. Stewart in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

52. Defendants Waldroup and Devouton used excessive force. The force used by Defendants Waldroup and Devouton was not needed, as Mr. Stewart was not resisting arrest. The force was used for punishment rather than to maintain order, and there was no warning given before the force was used. The action of exiting his car did not warrant any use of force against Mr. Stewart. Mr. Stewart was not under arrest and, therefore, the force was not necessary for any lawful purpose. Defendants did not give any warning or directives to Mr. Stewart until he was restrained on the ground, where they yelled for him to stop resisting arrest, which he was not doing.

53. As a direct and proximate result of the excessive force of Defendant Waldroup and Defendant Devouton, Mr. Stewart suffered injuries including a fractured nose and blackened eye. The attack caused Mr. Stewart to be fearful for his life and well-being, and caused emotional

suffering as well as bodily pain, fear, apprehension, depression, and consternation. Additionally, Mr. Stewart has suffered special damages in the form of medical expenses.

54. The acts of Defendants Waldroup and Devouton as described above were intentional, wanton, malicious, oppressive, reckless, and callously indifferent to the rights of Mr. Stewart, thus entitling Mr. Stewart to an award of punitive damages against Defendants Waldroup and Devouton.

55. If Mr. Stewart prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Mr. Stewart prays for judgment against Defendants Waldroup and Devouton, for compensatory damages in a fair and reasonable amount, and for punitive damages, plus costs of this action, reasonable attorneys' fees, and for such other and further relief as this honorable Court deems fair and appropriate under the circumstances.

### COUNT III
### Unlawful Search Claim by Ms. Jones and Mr. Stewart
### Against Defendants House, Devine, Monnig, and Waldroup

For their cause of action against Defendant House, Devine, Monnig, and Waldroup in Count III, Plaintiffs Tranell Stewart and Lisa Jones state as follows:

56. Ms. Jones and Mr. Stewart incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

57. In returning to the family home and searching it without a warrant and upon threat of arrest, Defendants House, Devine, Monnig, and Waldroup (Collectively, the "Search Defendants") performed an unlawful search of Ms. Jones and Mr. Stewart's home, thereby violating the Fourth and Fourteenth Amendments of the United States Constitution.

58. The Search Defendants ransacked the home of Mr. Stewart and Ms. Jones, leaving cupboards open and clothing removed from drawers.

59. The Search Defendants did not have a search warrant to search the house of Mr. Stewart and Ms. Jones.

60. No exception to the warrant requirement existed to justify their search.

61. Neither Ms. Jones nor Mr. Stewart consented to the search. Consent to a search must be given voluntarily, without any coercion or duress. The Search Defendants were only able to obtain consent through coercion, namely Defendant House's threat to arrest Ms. Jones and take away her children.

62. There were no exigent circumstances to justify the unlawful search.

63. As a direct result of the conduct of the Search Defendants, Ms. Jones and Mr. Stewart suffered damages including: great concern for their safety, as well as that of their children, fear, apprehension, anxiety, consternation, and emotional distress.

64. The acts of Defendants House, Devine, Monnig, and Waldroup described herein were intentionally wanton, malicious, and/or were callously indifferent to the rights of Ms. Jones and Mr. Stewart, thus entitling them to an award of punitive damages against the Search Officers.

65. If Ms. Jones and Mr. Stewart prevail, they are entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Lisa Jones and Tranell Stewart respectfully pray that this Court enter judgment in their favor and against Defendants House, Devine, Monnig, and Waldroup for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT IV
### *Monell* Municipal Liability Claim by both Plaintiffs
### Against Defendant Maryland Heights

For their cause of action against Defendant Maryland Heights, Plaintiffs Tranell Stewart and Lisa Jones state as follows:

66. Ms. Jones and Mr. Stewart incorporate by reference the allegations set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

67. The City of Maryland Heights maintained a custom of conducting unlawful searches and seizures on African-Americans living in and traveling through the City of Maryland Heights.

68. For each of the six years from 2011-2016, the City of Maryland Heights submitted compilation reports to the Missouri Attorney General regarding the racial disparities of the drivers whose cars were stopped and searched by Maryland Heights police officers.

69. In each year from 2011-2016, the City of Maryland Heights had a Disparity Index above 2.00 for African-American drivers, meaning that those drivers were pulled over more than two times their demographic representation in the City of Maryland Heights.

70. Year after year, the City of Maryland Heights failed to remedy this disparate treatment of its officers: in 2016, the year of Mr. Stewart's unlawful detention and assault, the City's Disparity Index was 3.09, meaning that the number of Black drivers was pulled over more than **three times** their demographic representation in the City.

71. The City of Maryland Heights similarly maintained a custom of searching the vehicles of Black drivers at disproportionate rates compared to white drivers. For each of the years 2011-2016, a higher percentage of Black drivers detained by Maryland Heights police had their vehicles searched than white drivers.

72. Even though Maryland Heights police officers searched the cars of Black drivers at a disproportionately high rate, it found proof of illegal activity more frequently in the vehicles of white drivers. For five of the six years from 2011-2016, the Contraband Hit Rate (the percentage

of searches where contraband was found) was higher for white drivers than Black drivers in data submitted to the Attorney General.

73. The foregoing data show that the City of Maryland Heights knew of and failed to remedy systemic practices within its police department of seizing Black drivers at disproportionate rates and without reasonable suspicion.

74. The data also show that the City of Maryland Heights knew of and failed to remedy systemic practices within its police department of subjecting Black citizens to disproportionate rates of unlawfully high searches.

75. In its failure to remedy these longstanding problems, the City of Maryland Heights was deliberately indifferent.

76. Defendant Maryland Heights is therefore culpable for the constitutional violations set forth in the aforementioned Counts, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

77. The seizure of Mr. Stewart and the search of the Plaintiffs' home was a result of the aforementioned customs.

78. If Ms. Jones and Mr. Stewart prevail, they are entitled to recover attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Lisa Jones and Tranell Stewart respectfully pray that this Court enter judgment in their favor and against Defendant Maryland Heights for compensatory damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## **FINDER OF FACT**

Plaintiff demands a jury trial of all issues properly triable by jury.

Date submitted: October 25, 2021                    Respectfully submitted,

**ArchCity Defenders, Inc.**

By: /s/ *John M. Waldron*
John M. Waldron MBE #70401MO
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
jwaldron@archcitydefenders.org
314-361-8834 x 1021
314-925-1307 (fax)
*Attorney for Plaintiff Tranell Stewart*


**The Powell Law Firm**

By: /s/ *Kenneth Powell*
Kenneth Powell
Kent Carruthers
7750 Clayton Rd., Ste. 102
Saint Louis, MO 63117
kent@plfirm.com
kenny@plfirm.com
314-293-3777
314-786-0777 (fax)
*Attorneys for Plaintiff Lisa Jones*