UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRANELL STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21 CV 1282 JMB |
| ) | |
| OFFICER ALEXANDER WALDROUP, ) | |
| OFFICER RYAN DEVOUTON, OFFICER ) | |
| KEVIN DEVINE, OFFICER SHANE ) | |
| MONNIG, OFFICER CLIFF HOUSE, and ) | |
| CITY OF MARYLAND HEIGHTS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Tranell Stewart's Motion to Disqualify Counsel (Doc. 29). For the reasons set forth below and at the hearing held on January 26, 2023, the Motion is **GRANTED**.

## Background

On March 10, 2016, Tranell Stewart, Plaintiff herein, was charged by criminal complaint with possession of a controlled substance in the Circuit Court of St. Louis County after a September 22, 2015 traffic stop conducted by St. Louis County police officer Andrew Renner (Doc. 34-1) (hereinafter "possession case").[1] A warrant was issued as a result of the criminal complaint on March 9, 2016, it was executed in June, 2016 and Stewart bonded out that same month (Doc. 34-2). On August 31, 2016, however, a second warrant was issued for failure to appear (Doc. 34-3). Stewart retained the services of the Law Office of Evelyn C. Lewis, LLC to represent him on the possession case.

---

[1] The case is identified as 16SL-CR02001 and was pending before St. Louis County Judge Richard M. Stewart and then Judge Mary E. Ott.

On September 9, 2016, attorney Bridgett Fu, who currently represents all Defendants in this case, but who at the time was employed by the Lewis law firm, entered Evelyn Lewis' appearance, and was directly involved in recalling, or attempting to recall, the August 2016 failure to appear warrant on behalf of Stewart (Doc. 34-4, 34-5). Ms. Fu also filed a motion for discovery on behalf of Stewart (Doc. 34-7). Shortly thereafter, on November 4, 2016, Ms. Fu ended her employment with the Lewis law firm.

While the possession case was proceeding, and before Ms. Fu left the Lewis law firm, Stewart was stopped by City of Maryland Heights police officer Devoutan (on October 26, 2016). That traffic stop, and the events surrounding that traffic stop, form the basis of Stewart's civil rights complaint before this Court (Doc. 1). Officer Devoutan is one of the defendants named in the lawsuit. After this lawsuit was filed, Ms. Fu, now a partner at Brinker and Doyen, LLP, entered an appearance on behalf of all Defendants on December 16, 2021 (Doc. 3).

In this case, Stewart's deposition was scheduled for November 17, 2022. Prior to the deposition, Ms. Fu became aware that she previously represented Stewart after reviewing material in the possession case (Doc. 30-6). After consulting some ethics opinions, Ms. Fu decided that she could continue with Stewart's deposition and her representation of Defendants (Id.). Ms. Fu did not inform Plaintiff's counsel of her prior representation of Stewart until after the deposition (Id.).

At Stewart's deposition, Ms. Fu asked questions and received answers related to the possession case including whether Stewart recalled the traffic stop, whether he remembered missing a court date in August, 2016, whether he remembered pleading guilty, and whether he remembered being placed on probation (Doc. 35-2, pp. 4-5). Ms. Fu also questioned him about whether he was aware of the August 31, 2016 failure to appear warrant in the possession case:

> Q.  Do you remember if any attorney told you, hey, you've got a warrant for your arrest for not showing up for your court back in August of 2016?
>
> A.  I do not.
>
> Q.  All right.  So it sounds like you weren't aware whatsoever that there would have been a warrant out for your arrest if these documents are accurate back in 2016; is that right?
>
> A.  If that's the case, my lawyer would inform me, so –

(Id. pp. 7-8).  Ms. Fu then circled back to the October, 2016 traffic stop and asked Stewart whether he believed that the officer had any reason to stop him.  When Stewart stated there was no reason, Ms. Fu followed by asking "[d]espite having a felony warrant out?" (Id. 10).  According to Officer Devoutan's police report, the August 2016 warrant, along with other information, led him to conduct the October 2016 stop and detain Stewart, acts which form the basis of this lawsuit (Doc. 35-1).

Stewart's counsel now seeks to disqualify Ms. Fu and her law firm in light of her prior representation of Stewart in the possession case.  In response, Defendants argue that the possession case and this case are unrelated, that Stewart did not divulge confidential information related to his case to Ms. Fu, and that the motion to disqualify is untimely (Doc. 34).  Stewart's counsel filed a reply arguing that a conflict of interest exists that Stewart has not waived (Doc. 35).

## Discussion

Attorneys who practice before this Court are governed by Rules of Professional Conduct as adopted by the Supreme Court of Missouri.  Local Rule 12.02.  Motions to disqualify counsel rest within the sound discretion of this Court, Petrovic v. Amoco Oil Company, 200 F.3d 1140, (8th Cir. 1999), but should be carefully scrutinized in light of the interests at stake, including a parties' interest in having counsel of choice, and the potential for abuse.  Macheca Transport Co.

v. Philadelphia Indem. Co., 463 F.3d 827, 833 (8th Cir. 2006); Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007) (stating that "the Court subjects such motions to particularly strict scrutiny.").

Stewart argues that Ms. Fu's and her firm's continued representation of Defendants violates Missouri Rule 4-1.9(a) because Defendants' interests are materially adverse to a former client (Stewart) and Ms. Fu did not seek a waiver of the conflict, that the conflict is imputed to her firm, and that his motion is timely. Missouri Rule 4-1.9 provides:

> **(a)** A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> **(b)** A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 4-1. 6 and 4-1.9(c) that is material to the matter;
>
> unless the former client gives informed consent, confirmed in writing.
>
> **(c)** A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.
>
> Mo. Sup. Ct. R. 4-1.9.

In order to demonstrate a violation of Missouri Rule 4-1.9, Plaintiff must show: "(1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves

the same or a substantially related matter as the attorney's former representation of the movant. Polish Roman Cath. St. Stanislaus Par. v. Hettenbach, 303 S.W.3d 591, 600–01 (Mo. Ct. App. 2010). Defendants do not dispute that Ms. Fu was Stewart's former attorney and that the interests of Defendants (her current clients) are materially adverse to Stewart. Defendants argue, however, that Stewart's motion is untimely, that Stewart did not divulge any relevant confidential matters to Ms. Fu, and that the two matters are not "substantially related."

As to timeliness, Defendants argue that Stewart waited until a year after Ms. Fu entered an appearance to file the present motion even though Stewart should have known that Ms. Fu previously represented him. "A motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict . . . ." Terre Du Lac Property Owners' Ass'n v. Shrum, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983). It is reasonable to conclude from the filings and the hearing that Stewart did not know that Ms. Fu was one of his attorneys in the possession case. As such, he was not aware of any conflict. According to Ms. Fu, she did not become aware of her former representation of Stewart until she was preparing for his deposition. With that knowledge, however, she waited until after Stewart's deposition to inform his counsel, who then promptly filed the pending motion.

While Defendants argue that Stewart should have known who was representing him, the burden of safeguarding against conflicts, as Comment 1 to Missouri Rule 4-1.9 suggests, rests with the attorney, not the client: "After termination of a client-lawyer relations, *a lawyer has certain continuing duties* with respect to confidentiality and conflicts of interest and, thus, may not represent another client except in conformity with this Rule 4-1.9." Id. (emphasis added). Moreover, Ms. Fu has represented to the Court that, although she appeared for and advocated on behalf of Stewart in the possession case, she never entered a formal appearance. Thus, as a factual

matter, pushing the blame for the timing of this issue on Stewart and his counsel is not at all justified. The person in the best position to recognize the prior representation was Ms. Fu, not Stewart or his attorneys. Accordingly, the Court finds that the motion is timely.

The next issue is whether the 2016 possession case is the same as or substantially related to the instant civil rights case. In this case, the Court will focus on whether the two matters are substantially related.

Whether two matters are "substantially related," requires an analysis of both the facts and issues at stake to determine whether there are common issues and to determine if it can be fairly said that an attorney is changing sides on the matters at stake. In re Carey, 89 S.W.3d 477, 494 (Mo. 2002). To make this determination, courts consider a non-exhaustive list of six factors:

> (1) the case involved the same client and the matters or transactions in question are relatively interconnected or reveal the client's pattern of conduct; (2) the lawyer had interviewed a witness who was key in both cases; (3) the lawyer's knowledge of a former client's negotiation strategies was relevant; (4) the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant; (5) a common subject matter, issues and causes of action existed; and (6) information existed on the former client's ability to satisfy debts and its possible defense and negotiation strategies.

In re Carey, 89 S.W.3d at 494 (citation omitted). "In some cases, one factor, if significant enough, can establish that the subsequent case is substantially related." Id.[2] And, as set forth in Zerger & Mauer LLP v. City of Greenwood, 751 F.3d 928, 932 (8th Cir. 2014):

> Rule 4–1.9(a)'s primary concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation. The Rule is prophylactic, aimed at preventing even the potential that a former client's confidences and secrets may be used against him. Thus, when

---

[2] Comment 3 to Missouri Rule 4-1.9 states that:

Matters are "substantially related" for purposes of this Rule 4-1.9 if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

> representations are substantially related, we will presume that confidences were disclosed for conflict-of-interest purposes.

(citations, quotations, and editing marks omitted); See State ex rel. Thompson v. Dueker, 346 S.W.3d 390, 397 n.4 (Mo. Ct. App. 2011) (suggesting that there is a presumption in Rule 4-1.9 cases that confidences were disclosed during a prior attorney-client relationship).

Stewart argues that Ms. Fu represented him in the possession case when the warrant at issue in this case was issued, and she questioned him extensively about that case and warrant in the present case. Stewart also argues that there exists an "irrebuttable presumption" (Doc. 30, p. 6) that confidences were disclosed and that, even though Ms. Fu may not remember the particulars of her representation of Stewart (or even that she did represent him), she would have reviewed his case and reached conclusions as to his character and pattern of conduct. As to the above factors, Stewart argues: (1) the possession case and this case are interconnected because they involve a warrant at issue in both cases; (2) Ms. Fu would have learned information that would reveal Stewart's pattern of conduct; (3) Ms. Fu would have access to Stewart's possession case file which would have given her insight into Stewart's goals for resolution and hence, negotiation strategies; (4) Stewart is a primary witness and Ms. Fu may use her prior knowledge to attack his credibility; (5) common subject matter includes the warrant in the possession case and Stewart's criminal history and credibility; and, (6) Ms. Fu had access to Stewart's financial information and therefore may use such information in negotiating a resolution of this matter.

In response, Defendants argue that (1) the possession case and this civil rights case do not involve overlapping theories of liability; (2) Ms. Fu did not interview any witnesses in the possession case; (3) no negotiations had taken place in the possession case; (4) there are no common witnesses (except Stewart), or legal theories (5) there are no common subject matters, issues, or causes of action; and, (6) Ms. Fu was not a part of any defense or negotiation strategies.

Defendants are correct that the possession case and this case are different; the first involves a criminal charge that is technically separate from the criminal matter underlying this civil rights case. Defendants are further reasonable in inviting the Court to consider that Ms. Fu seems to have appeared once on Plaintiff's behalf, filed what looks like standard discovery requests, and left her prior firm before Stewart's possession case was resolved. However, it is not so reasonable to simply assume that Ms. Fu's involvement in the possession case was so minimal and tangential that she was not and could not have been privy to any meaningful confidential information. She argued to a court that a warrant for failure to appear issued in the possession case should be recalled. It would be difficult to make any meaningful argument without having some idea of an appropriate strategy and knowledge of her client—Stewart. The fact that she may not now recall any relevant strategy or information is not material.

The possession case and this matter are substantially related and significantly overlap. Ms. Fu actually represented Stewart *at the time of the arrest forming the basis of this lawsuit*. She also had some involvement in the August warrant that underlies and potentially justifies at least some of Defendants' actions in allegedly staking out Stewart, being in a position to conduct a traffic stop, detaining him, and searching his residence. While Defendants argue that the August warrant is a small and perhaps tangential issue in this matter, it is in fact central to whether there was reasonable suspicion or probable cause that would justify at least some of Defendant's conduct. See Just v. City of St. Louis et al., 7 F.4th 761 (8th Cir. 2021) (finding qualified immunity where there was probable cause or arguable probable cause for an arrest).

Moreover, even if this Court were to find that the two matters were not substantially related at the inception of this lawsuit, the matters became substantially related when Ms. Fu questioned Stewart about the possession case and specifically about events during which she was his attorney.

Finally, Ms. Fu's potential involvement in this case as a witness became a possibility when she questioned Stewart about whether "any attorney" in the possession case, a reference to herself and her former firm, spoke with Stewart about the very warrant that forms the basis, in part, of the detention in the criminal case underlying this civil rights lawsuit.

While there is a difference between a criminal case and a civil rights case, both matters implicate the Fourth Amendment and whether there was probable cause to arrest or detain Stewart. Certainly Ms. Fu, as a matter of due diligence, would have had access to and reviewed Stewart's case file in the possession case prior to representing him, handling the August warrant, and issuing discovery requests associated with that case. She therefore would have had access to whatever information might be in that file related to Stewart credibility, truthfulness, and criminal history or interactions with police, even if she does not remember her representation of Stewart. See Kitchen v Bridgeton Landfill, LLC, __ F.3d __, 2022 WL 4534428, *3 (E.D. Mo. 2022) ("Whether [the attorney] specifically remembers the documents or confidences disclosed is of no instance. Avoiding the risk of even inadvertent disclosure of confidential information helps to ensure the integrity of these judicial proceedings and maintain public confidence in the legal profession."). All of these factors are central to this litigation; Stewart's credibility will be uniquely at issue in this civil rights case. At the very least, there is a "substantial appearance" that confidential information was disclosed that may be of value to Defendants in litigating this case and/or negotiating a settlement. Zerger, 751 F.3d at 933.

Accordingly, pursuant to Missouri Rule 4-1.9 (a), Ms. Fu is not permitted to represent Defendants in this matter. Ms. Fu's conflict is further imputed to Brinker and Doyen, LLC in accordance with Missouri Rule 4-1.10(a). Ms. Fu is a partner in her firm and the "prohibition is [not] based on a personal interest . . . ." Id. And, while not raised by the parties, even if there were

a screening procedure that would have isolated Ms. Fu's involvement, such a procedure would not prevent the firm from being disqualified.  See East Maine Baptist Church v. Regions Bank, 2007 WL 3022220, 4 (E.D. Mo. 2007).

## Conclusion

For the foregoing reasons, Plaintiff's Motion to Disqualify Counsel (Doc. 29) is **GRANTED**.  Accordingly,

**IT IS ORDERED THAT** Attorney Bridgett Nicole Fu and the law firm Brinker and Doyen, LLP are **DISQUALIFIED** from representing Defendants in this matter.

**IT IS FURTHER ORDERED** that Defendant's oral Motion to Stay Deadlines (Doc. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that the law firm Brinker and Doyen, LLP, shall forthwith notify all Defendants of this Order and direct Defendants to secure new counsel who will be required to appear at a status conference on **March 7, 2023 at 10:00 a.m.** in Courtroom 15S. Counsel for all parties must be present.  Finally,

**IT IS FURTHER ORDERED** that counsel for all parties must confer and prepare a revised joint scheduling plan and submit that plan to the Court no later than **March 6, 2023**.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of January, 2023